[No. B033208. Second Dist., Div. Five. Nov 22, 1988.]

WILLIAM G. SCARINGE et al., Plaintiffs and Respondents, v. J. C. C. ENTERPRISES, INC., Defendant and Appellant.

1538

**COUNSEL**

Richards, Watson & Gershon, Marsha Jones Moutrie and Beth A. Shenfeld for Defendant and Appellant.

Melby & Anderson, Jarrett S. Anderson and Julianne S. Nichols for Plaintiffs and Respondents.

**OPINION**

**KENNARD, J.**—Defendant J.C.C. Enterprises, Inc., appeals from an order of the superior court granting a preliminary injunction halting all construction on the Rices' home that would obstruct the view of the Rices' neighbors, William and Ellen Scaringe (plaintiffs).[1] Defendant contends the trial court abused its discretion in ordering the preliminary injunction. We agree, and reverse the order.

---

[1] The Rices are defendants in this action but are not parties to this appeal.

## FACTS

The verified complaint, declarations and exhibits filed in conjunction with the preliminary injunction hearing disclosed the following facts:

Plaintiffs' two-story home at the top of the Glendale mountains affords a sweeping panoramic view of the San Fernando Valley. When plaintiffs purchased their home on lot 43 of tract 31369 in 1982, the adjoining lot to the west now owned by defendants was vacant.

Plaintiffs bought their home from the developer, Tract No. 31369 Associates, Inc. (hereafter Developer), by grant deed dated March 25, 1982, and recorded April 1, 1982. At the time of sale, Developer showed plaintiffs a declaration of conditions, covenants and restrictions (CCRs) prohibiting the construction of buildings that would interfere with the views of adjoining lot owners in the tract. Although plaintiffs' deed did not mention the CCRs, plaintiffs relied on their validity and enforceability when purchasing their home.

There actually were two sets of CCRs recorded against tract 31369 when plaintiffs purchased their home. The first CCRs were recorded by the original tract owners (the Henrys) on October 5, 1970, when the tract consisted of four undeveloped parcels. Those CCRs stated in pertinent part: "Each single family structure erected on Parcels A, B, and C shall not exceed one story in height. . . . [¶] No structure of any kind whatsoever shall be erected on Parcels A, B, C and D that will in any way obstruct or detrimentally affect the view of any abutting property owner."

Developer purchased lots 1 through 63 from the Henrys by grant deed dated March 22, 1977, and recorded April 25, 1977. Developer's deed stated that the lots were subject to CCRs "of record, if any."

On July 8, 1981, Developer recorded new CCRs against all but five lots in the tract. The CCRs included a statement that they were "in furtherance of a general plan to promote and to protect the cooperative aspect of such development and . . . for the purpose of enhancing and perfecting the value, desirability and attractiveness of said real property." The CCRs also purported to impose mutual equitable servitudes which were to run with the land. The restriction at issue stated: "No structure of any kind whatsoever shall be erected on any lot that is the subject of this Declaration that will, in any way, obstruct or detrimentally affect the view of any abutting property Owner from the residence constructed or to be constructed on the lot owned by such abutting property Owner."

In 1983, the year after plaintiffs had purchased their home, Developer experienced financial difficulties. This led to the transfer of the tract's 32 unsold lots to its lender, First Interstate Bank. The latter took title to these lots by quitclaim deed dated January 3, 1983, and recorded January 14, 1983.

On August 10, 1983, First Interstate Bank recorded new CCRs to "supersede" the 1970 and 1981 CCRs. The 1983 CCRs applied to all 32 unsold lots in the tract. Although the 1983 CCRs omitted a view-protection clause, it imposed height and setback limitations and required that construction be approved by an architectural control committee.

Defendant JCC Enterprises, Inc. bought the unsold lots from First Interstate Bank by grant deed dated September 19, 1984, and recorded November 1, 1984. Defendant's deed mentioned that the lots were subject to CCRs "of record."

The Rices purchased lot 44 from defendant by grant deed dated October 14, 1986, and recorded November 13, 1986. The Rices' deed made no mention whatsoever of the 1970, 1981, or 1983 CCRs. It also made no reference to any encumbrances on the property.

Defendant began building the Rices' two-story home in July 1987, after the latter had obtained approval from the City of Glendale and the tract's architectural control committee. After the first story was framed, plaintiffs filed this action for injunctive relief on October 1, 1987. Plaintiffs alleged the Rices' home would obstruct their western view, in violation of the 1970 and 1981 CCRs.

Plaintiffs sought the instant preliminary injunction on October 23, 1987. A hearing on the order to show cause was set for November 9, 1987.

Defendant (and the Rices) opposed the preliminary injunction on the ground that the 1970 and 1981 CCRs were unenforceable as either covenants running with the land or equitable servitudes. Defendant also asserted equitable defenses of laches and unclean hands. Defendant pointed out that plaintiffs did not object when they were shown the lay-out for the foundation prior to construction of the Rices' house. Defendant argued that plaintiffs' own home violated the 1970 and 1981 CCRs because it exceeded the one-story height limitation of the 1970 CCRs and it partially obstructed the view from adjoining lots. Moreover, defendant claimed, the steep terrain rendered it impossible to build a home that would not affect plaintiffs' western view. Defendant contended that, since most of the homes in the tract violated the two-story limitation and the restriction against interfering

with neighboring owners' views, the CCRs were obsolete and unenforceable. Defendant alleged that to enforce the CCRs at this late date would "call into question the legality of all past and present construction" in the area.

Defendant argued a preliminary injunction would cause severe hardship. Defendant pointed out the project would lose its contractors, financing and insurance. In addition, the delay would threaten the exposed subfloor and framing. At the time of the hearing, the Rices had spent about $221,100 in building costs.

On February 17, 1988, the trial court ordered a preliminary injunction halting all construction that would obstruct plaintiffs' view, contingent upon the posting of a $50,000 bond. The trial court found the 1981 CCRs applicable to plaintiffs' lot and that of the Rices. The court concluded that the 1981 CCRs did not run with the land, but that they could be enforced as mutual equitable servitudes. The trial court found that plaintiffs would suffer severe hardship if the building were to be completed. As the court explained: "[I]f the structure were to be completed it is unlikely that a court would order the tearing down of the structure and plaintiff would permanently lose a portion of his view. Damages fo [sic] loss of view would be difficult to assess, should plaintiff be successful in hiw [sic] lawsuit."

## DISCUSSION

■ The decision whether to grant or deny a preliminary injunction rests in the sound discretion of the trial court (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889].) A reviewing court will not reverse that decision except for an abuse of discretion. (*People* v. *Black's Food Store* (1940) 16 Cal.2d 59, 61 [105 P.2d 361].)

■ The party challenging the injunction bears the burden of showing an abuse of discretion. (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].) An abuse of discretion occurs when the trial court's decision exceeds the bounds of reason or contravenes the uncontradicted evidence. (*Ibid.*)

■ The granting of a preliminary injunction does not constitute a final adjudication of the controversy. (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840].) Its purpose is to preserve the status quo until a final determination following a trial. (*Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d 512, 528.) ■ A trial court should grant a preliminary injunction only if the plaintiff shows a "reasonable probability" that he would prevail at trial and would suffer more harm

from a denial than the defendant would suffer from its grant. (*Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 205-206; *Friends of Westwood, Inc.* v. *City of Los Angeles* (1987) 191 Cal.App.3d 259, 264 [235 Cal.Rptr. 788].)

■ Defendant contends the trial court abused its discretion under the "reasonable probability" test in finding in favor of plaintiffs on the applicability of the 1981 CCRs.

1. *Whether the 1981 CCRs Are Enforceable Under Contract Principles*

■ Plaintiffs do not contend and the evidence does not disclose that the Rices agreed to be bound by the 1981 CCRs when they purchased their property. Nor do plaintiffs claim to be third party beneficiaries to the purchase contract. In short, there was no privity of contract between plaintiffs and the Rices. Thus, the Rices are not contractually obligated to comply with the 1981 CCRs. (See *Trahms* v. *Starrett* (1973) 34 Cal.App.3d 766, 772 [110 Cal.Rptr. 239].)

2. *Whether the 1981 CCRs Run With the Land, or Are Enforceable as Equitable Servitudes*

■ Previously recorded CCRs can bind subsequent purchasers of lots in planned subdivisions, if statutory requirements are met. Covenants run with the land when they are appurtenant to the estate granted and pass with it, "so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee in the same manner as if they had personally entered into them." (Civ. Code, § 1460.) The only covenants that run with the land are those specified in or allowed by statute (Civ. Code, § 1461). (See *Anthony* v. *Brea Glenbrook Club* (1976) 58 Cal.App.3d 506, 510 [130 Cal.Rptr. 32].)

A covenant can run with the land under either section 1462 or section 1468 of the Civil Code. ■ A covenant will run under Civil Code section 1462 if it is "contained in a grant" conveying property and is made "for the direct benefit of the property." The California Supreme Court has narrowly applied section 1462, however, by holding that a covenant which burdens property does not run with the land. (*Marra* v. *Aetna Construction Co.* (1940) 15 Cal.2d 375, 378 [101 P.2d 490]; see also, *McCaffrey* v. *Preston* (1984) 154 Cal.App.3d 422, 436 [201 Cal.Rptr. 252]; *Oceanside Community Assn.* v. *Oceanside Land Co.* (1983) 147 Cal.App.3d 166, 174 [195 Cal.Rptr. 14].) Since the restrictions plaintiffs seek to enforce impose burdens on the Rices' property, they do not run with the land under section 1462.

■ In contrast, Civil Code section 1468 permits enforcement of the burden as well as the benefit. Prior to its amendment in 1968, a covenant

would run under section 1468 only if both the covenantor and the covenantee were owners of the land at the time the covenant was made.[2] The 1968 amendment made the burden of the grantor's covenants run, as well as those between owners. (See 3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 392, p. 2083.) A subsequent amendment in 1969 also makes the burden of the grantee's covenants run.

Civil Code section 1468 now provides that a grantor's or a grantee's covenant to do or refrain from doing some act on his own land for the benefit of the covenantee runs with both the land of the grantor and the grantee, and shall benefit or burden their successors in interest if it meets four requirements. Those are: (1) the instrument containing the covenants particularly describes the benefited and burdened land; (2) the instrument states that the parties' successors in interest shall be bound for the benefit of the land owned by, granted by, or granted to the covenantee; (3) the act touches and concerns the land; and (4) the instrument containing the covenant is recorded.

Traditionally, courts have analyzed CCRs recorded before the 1969 amendment to section 1468 under the doctrine of equitable servitudes because those CCRs did not run under section 1462 or the prior version of section 1468. (See, e.g., *Taormina Theosophical Community, Inc.* v. *Silver* (1983) 140 Cal.App.3d 964, 972, fn. 3 [190 Cal.Rptr. 38], where the court said: "Civil Code section 1468 which also describes when a covenant will run, is not applicable to this case. In 1969, when Taormina first sold the property, this section only applied to restrictive or burdensome covenants between two landowners or to covenants which burden the grantor's land. These covenants burden the grantee's land. Although the statute has been amended to cover this situation, it would not be proper to give the amendment retroactive application." See also, *Oceanside Community Assn.* v. *Oceanside Land Co., supra,* 147 Cal.App.3d at p. 174, fn. 4.) Covenants recorded after the 1969 amendment to section 1468, such as the CCRS involved here, may now be found to run with the land even though they burden the grantee's land.

The first of Civil Code section 1468's four requirements, that the instrument particularly describe the affected land, appears to codify a requirement developed in equitable servitude cases. (See Comment, *Covenants and Equitable Servitudes in California* (1978) 29 Hastings L.J. 545, 563.)

---

[2] Civil Code section 1468 as originally enacted provided: "A covenant made by the owner of land with the owner of other land to do or refrain from doing some act on his own land, which doing or refraining is expressed to be for the benefit of the land of the covenantee, and which is made by the covenantor expressly for his assigns or to the assigns of the covenantee, runs with both such parcels of land." (Stats. 1905, ch. 450, § 1, p. 610.)

■ Mutual equitable servitudes are created when the owner of a subdivided tract conveys lots by deeds containing mutually enforceable restrictions pursuant to a common plan designed for the benefit of the entire tract. (*Werner v. Graham* (1919) 181 Cal. 174, 183 [183 P. 945].) An essential element of an equitable servitude is a written instrument between the grantor and the grantee showing their joint intent that the grantee's title is conveyed subject to the common plan of restrictions. (*Id.* at p. 184.) The grantor's intent, although readily ascertainable from the common plan of restrictions, is insufficient. As the state Supreme Court said in *Werner*: "[I]t is not [the grantor's] intent that governs. It is the *joint* intent of himself and his grantees, and as between him and each of his grantees the instrument or instruments between them, in this case the deed, constitute the final and exclusive memorial of such intent. . . . [I]f the parties desire to create mutual rights in real property of the character of those claimed here they must say so, and must say it in the only place where it can be given legal effect, namely in the written instruments exchanged between them which constitute the final expression of their understanding." (*Werner v. Graham, supra,* 181 Cal. at pp. 184-185, italics added.)

■ Defendant argues that in California mutual equitable servitudes can be created only by deed. In support, defendant cites this language from *Riley v. Bear Creek Planning Committee* (1976) 17 Cal.3d 500, 512 [131 Cal.Rptr. 381, 551 P.2d 1213]: "Equitable servitudes in land may be created in this state only by deed, . . . ." Defendant's reliance on *Riley* is misplaced. In *Hudson Oil Co. v. Shortstop* (1980) 111 Cal.App.3d 488 [168 Cal.Rptr. 801], the court concluded the state Supreme Court's comment in *Riley,* that equitable servitudes in land may be created only by deed, to be mere dictum. As the *Hudson* court explained: "The Supreme Court's remarks . . . were germane to a factual situation in which grant deeds were the written instruments used to create the respective rights of the parties. . . . [¶] In light of the limited focus in *Riley* on a grant deed as opposed to another type of written instrument, we do not believe the court intended by conclusionary dicta to preclude the creation of equitable servitudes in written instruments other than deeds. Rather, we deem the court meant to clarify that a restrictive covenant must be contained in the written instrument embodying the understanding between the original parties (i.e., original grant deed) in order to be binding on successors in interest of the covenantor (i.e., subsequent grantees from the common grantor). Such conclusion is consistent with established law that contracting parties are free to agree to restrictions on the use of real property by memorializing their intent in other types of written instruments and that equitable principles apply to all such contracts. . . ." (*Id.* at p. 495.)

Evidence of a collateral oral agreement between the grantor and the grantee is inadmissible to get around the rule in *Werner* that any land use

restrictions be set forth "in the only place where it can be given legal effect, namely, in the written instruments exchanged between them which constitute the final expression of their understanding." (*Werner* v. *Graham, supra,* 181 Cal. 174, 185); *Riley* v. *Bear Creek Planning Committee, supra,* 17 Cal.3d 500, 509-512.) Underlying the *Werner* rule are "the same policy considerations as underlie the statute of frauds. . . ." (*Riley* v. *Bear Creek Planning Committee, supra,* at p. 510.) As ·the state Supreme Court explained in *Riley* : " 'Any other rule would make important questions of title to real estate largely dependent upon the uncertain recollection and testimony of interested witnesses.' " (*Ibid.*) The *Riley* court held the *Werner* rule to be "a viable 'rule of property' [citations] unimpaired and unaffected by subsequent modifications of the parole evidence rule." (*Id.* at p. 511.)

Nor may the *Werner* rule be overcome by evidence of the grantee's actual knowledge of and intent to be bound by the general plan of restrictions. (*Riley* v. *Bear Creek Planning Committee, supra,* 17 Cal.3d at p. 512; *Trahms* v. *Starrett, supra,* 34 Cal.App.3d at p. 771; *Girard* v. *Miller* (1963) 214 Cal.App.2d 266, 276 [29 Cal.Rptr. 359]; *Murry* v. *Lovell* (1955) 132 Cal.App.2d 30, 32-36 [281 P.2d 316].)

With these principles in mind, we now consider whether under Civil Code section 1468 the 1981 CCRs involved here run with the land and would therefore be enforceable by plaintiffs against the Rices' lot. The record fails to disclose the existence of a written instrument expressing Developer's and plaintiffs' joint intent that plaintiffs' title would be subject to the 1981 CCRs for the benefit of the other lots, and that the lots of Developer's subsequent grantees would be bound for the benefit of plaintiffs' lot. Thus, the first requirement of Civil Code section 1468 was not met. Therefore, as the trial court found, the 1981 CCRs do not run with the land.

The remaining question is whether, as the trial court found, the 1981 CCRs are enforceable as equitable servitudes. As we explained earlier, to create an equitable servitude, both the grantor and the grantee must intend that the land conveyed by the grantor to the grantee be restricted pursuant to a general plan of restrictions. (*Werner* v. *Graham, supra,* 181 Cal. 174, 184.) Here, even if plaintiffs could produce at trial deeds of prior grantees who took title to other lots subject to the 1981 CCRs, that would not create a right of enforcement in plaintiffs. Those prior grantees could enforce the 1981 CCRs against subsequent grantees even if their deeds failed to disclose the CCRs, as long as they had actual or constructive notice of the CCRs. (*Trahms* v. *Starrett, supra,* 34 Cal.App.3d at p. 771.) But the subsequent grantees, such as plaintiffs and defendants, could not enforce the CCRs against each other in the absence of a written instrument expressing their intent to be bound by the CCRs. (*Id.* at p. 772.) As dis-

cussed earlier, such a written instrument is lacking here. Therefore, the 1981 CCRs are not enforceable as equitable servitudes.

 Since there was no evidence before the trial court indicating that plaintiffs had a "reasonable probability" (*Robbins* v. *Superior Court, supra,* 38 Cal.3d 199, 206) of prevailing at trial in their attempt to establish the enforceability of the 1981 CCRs,[3] the trial court abused its discretion in granting a preliminary injunction.

### DISPOSITION

We reverse the order granting the preliminary injunction. Each party to bear its own costs on appeal.

Ashby, Acting P. J., and Boren, J., concurred.

---

[3] The trial court made no finding on the applicability of the 1970 CCRs.