[No. B054750. Second Dist., Div. Four. Apr. 26, 1994.]

SOMAN PROPERTIES, INC., Plaintiff and Appellant, v.
RIKUO CORPORATION, Defendant and Respondent.

COUNSEL

Douglas Brian Levinson for Plaintiff and Appellant.

Larr & Poteet, William R. Larr and Brian K. Brookey for Defendant and Respondent.

OPINION

WOODS (A. M.), P. J.—Appellant Soman Properties, Inc., sued respondent Rikuo Corporation alleging that respondent breached its duty to maintain the common areas of the parties' adjacent commercial properties comprising a shopping center. The source of this duty was alleged to be a written document entitled "Declaration of Establishment of Protective Covenants, Conditions and Restrictions and Grants of Easements" (hereafter CC&R's) filed in 1975 when the then-owner of the property subdivided it into two parcels. Appellant alleged that pursuant to the document, respondent, as the owner of parcel 2, was obligated to operate, manage, control, repair and

maintain the common areas of the two parcels, but had refused to do so. Respondent denied that it owed appellant any such duty for several reasons.[1]

The matter was tried to the court. At the close of appellant's case, the trial court granted respondent Rikuo's motion for judgment pursuant to Code of Civil Procedure section 631.8.

Appellant contends the judgment must be reversed because the trial court erred, as a matter of law, in concluding respondent is not bound by the CC&R's. Alternatively, appellant argues that if the first conveyance of each parcel was required to mention the CC&R's in order for them to be binding, that requirement was met in this case. For reasons explained more fully in this opinion, we agree and reverse.

FACTS

Martin Weiss (not a party to this litigation) was the owner of commercial real property in Diamond Bar, California. On May 30, 1975, he recorded a subdivision parcel map which divided the property into two parcels. He concurrently recorded an 18-page document (the CC&R's) in which he established mutual covenants, conditions, restrictions and easements on the two parcels pursuant to Civil Code section 1468.[2] The document declared that the two parcels were to share a "common area" which was to be used for

---

[1]Specifically, respondent alleged that it was not a party to any contract with appellant and was not on notice of the CC&R's when it took title to its property; that it did not assume any duties to appellants; that if the CC&R's were found to be binding, respondent would have exclusive discretion under the CC&R's to determine what improvements, if any, were necessary; that the CC&R's were unenforceable to the extent they imposed substantially greater burdens than originally anticipated; that they were unenforceable due to changed circumstances; and that appellant was equitably estopped from seeking enforcement of the CC&R's because appellant breached them by permitting an unauthorized use of the premises.

[2]Civil Code section 1468 provides, in relevant part: "Each covenant, made by an owner of land with the owner of other land or made by a grantor of land with the grantee of land conveyed, or made by the grantee of land conveyed with the grantor thereof, to do or refrain from doing some act on his own land, which doing or refraining is expressed to be for the benefit of the land of the covenantee, runs with both the land owned by or granted to the covenantee and the land owned by or granted to the covenantee and shall . . . benefit or be binding upon each successive owner, during his ownership, . . . where all of the following requirements are met: [¶] (a) The land of the covenantor which is to be affected by such covenants, and the land of covenantee to be benefited, are particularly described in the instrument containing such covenants; [¶] (b) Such successive owners of the land are in such instrument expressed to be bound thereby for the benefit of the land owned by, granted by, or granted to the covenantee; [¶] (c) Each such act relates to the use, repair, maintenance or improvement of, or payment of taxes and assessments on, such land or some part there-of, . . . ; [¶] (d) The instrument containing such covenants is recorded in the office of the recorder of each county in which such land or some part thereof is situated. [¶] Where several persons are subject to the burden of any such covenant, it shall be apportioned among them

parking, ingress and egress of vehicles, utilities, and pedestrian and vehicular movement. One provision in the document provided that this common area was to be managed by the owner of parcel 2. The duties of the manager included reconstruction work and capital improvements to the common area, maintenance of driveways, sidewalks, signs, lighting, retaining walls and landscaping, weekly cleaning of the area, and payment of insurance premiums and utility services to the common area.

The owner of parcel 1 was to pay "only the sum of $500 each month as its total share of all [maintenance] costs and expenses . . . ." All remaining costs were to be the "sole obligation" of the owner of parcel 2 while acting as manager. The owner of parcel 1 had the right to give written notice that necessary maintenance was being neglected and to undertake such maintenance if it was not performed within 10 days. Under these circumstances the owner or tenant of parcel 1 was entitled to reimbursement for the costs of repairs from the owner of parcel 2. The owner of parcel 1 also had the right to assume management powers by simply giving notice to the owner of parcel 2.

The CC&R's provided that each of its provisions were covenants running with the land and were binding upon all successive owners or persons having an interest therein whether title was acquired "by foreclosure, trustee's sales, or otherwise" and that any conveyance made in violation of the CC&R's was void and could be set aside upon petition of one or more of the owners.

Eleven months after the CC&R's were recorded, Mr. Weiss conveyed parcel 1 to Downey Savings and Loan by deed which stated that the conveyance was subject to the "Declaration of Establishment of Protective Covenants, Conditions, and Restrictions and Grants of Easements, dated May 29, 1975, and recorded on May 30, 1975 . . . ." In June of the same year, Downey conveyed parcel 1 to appellant Soman Properties, Inc., by a deed which recited that the conveyance was subject to property taxes for the fiscal year 1976-1977 and "Covenants, conditions, restrictions, reservations, easements, rights, liens, and leases of record."

Sometime thereafter, Martin Weiss became bankrupt. Parcel 2 was included among the assets which came under the control of the trustee in bankruptcy. Appellant Soman filed a claim in the bankruptcy proceedings for a lien upon parcel 2 pursuant to the CC&R's. Appellant and the trustee

pursuant to Section 1467, except that where only a portion of such land is so affected thereby, such apportionment shall be only among the several owners of such portion. This section shall apply to the mortgagee, trustee or beneficiary of a mortgage or deed of trust upon such land or any part thereof while but only while he, in such capacity, is in possession thereof."

entered into a stipulation which provided: "Soman has agreed that the amount of its claimed lien to the Subject Property as it exists on the date of the sale thereof shall be removed as long as the same would attach to the proceeds of any sale of the Subject Property with the same force and effect as it had as of the date hereof." The stipulation provided that the trustee would not disburse the proceeds of the sale until the court determined the validity of Soman's claim and the respective rights of the parties to the stipulation. This stipulation was filed in the bankruptcy court on September 1, 1977.

On September 6, 1977, the bankruptcy court entered an order approving conveyance of the property to Samuel Hirt and Diana Hirt. The grant deed executed by the trustee recited that it was executed pursuant to that order. The legal description of the property, attached to the deed as a "rider," specified exceptions to the conveyance, such as oil, gas and mineral rights. It did not mention the CC&R's or restrictions of record. At least one other document recorded concurrently with the deed did, however. That document was the stipulation between the bankruptcy trustee and appellant, which was recorded in the official records of Los Angeles County at precisely the same time (3:27 p.m. on Nov. 1, 1977) as the deed to the Hirts.[3]

Five months later, the Hirts conveyed parcel 2 to Diamond Bar Associates for less than $100. The record does not reveal whether the deed mentioned the CC&R's or not. It described the property as "per legal description attached and made a part hereof described as Exhibit 'A'." That exhibit has not been included in the record. In March of 1978, Diamond Bar Associates conveyed parcel 2 to Sammis Diamond Bar Venture. The deed again made reference to an exhibit A which has not been included in the record.

Respondent Rikuo Corporation purchased the property from Sammis Diamond Bar Venture in June of 1982. The deed employed in this conveyance described the property as "Parcel 2 . . . more particularly described on Exhibit 'A' attached hereto and incorporated herein . . . ." The last sentence of exhibit A stated: "Subject to all Covenants, Conditions, and Restrictions and Easements of Record against the above-described Real Property."

This action was filed three years after respondent took title to parcel 2. The matter was originally set for jury trial. The trial date was continued,

---

[3]We have not been provided with the order of the bankruptcy court approving the sale to the Hirts. The record citation given by appellant in support of this proposition is a cite to the stipulation between appellant and the trustee in bankruptcy which was filed in the bankruptcy court on September 1, 1977. It does appear, however, that the stipulation was recorded with the Los Angeles County Recorder at 3:27 p.m. on November 1, 1977, the exact time the deed granting title to the Hirts was recorded. The county recorder assigned No. 77-1212358 to the stipulation and No. 77-1212364 to the Hirt deed, suggesting that seven documents, including the stipulation, were filed as part of the same transaction.

however, when the parties reported to the court they had settled. This purported settlement was not executed and ultimately the matter was tried to the court.

Appellant filed a trial brief in which it asserted that the maintenance covenant ran with the land, that respondent took title to its parcel with constructive and inquiry notice and actual knowledge of the CC&R's, and that respondent performed its maintenance duties from the time it took title to the property until January of 1985, at which point it stopped. Appellant asserted that there were no valid defenses to enforcement of the CC&R's and that it was entitled to both damages and an equitable lien in order to secure the payment of damages.

Respondent represented in its trial brief that its principals, who are Japanese and usually conduct business in the United States through interpreters, did not "understand or anticipate" that it was required to do anything other than "merely keeping the property swept clean on a reasonable basis[.]" Respondent contended that the expense of performing all of the maintenance described in the CC&R's would be "enormous and far in excess of the actual purchase price" paid for the property, that it was fulfilling its obligations under the CC&R's, and that appellant placed "an excessive and unanticipated burden upon the pavement and the underlying property" which respondent should not be required to maintain or repair. Respondent pointed out that the term of the CC&R's was 80 years, only 13 of which had elapsed. Respondent contended, inter alia, that it was not liable on a breach of contract theory; that the CC&R's did not run with the land because they were not mentioned in the first deed conveying parcel 2; the CC&R's were ambiguous in that they stated the covenants ran " 'with both the land owned by the covenantor and the land owned by the covenantor [sic]' "; that the CC&R's were not enforceable because they were unduly burdensome and were not commercially reasonable; and that appellant was estopped from relying upon them in light of its misuse of the property.[4]

Appellant presented testimony of eight witnesses, including the real estate brokers who represented respondent in the purchase of parcel 2 and the real estate broker who represented the seller in that transaction. Their testimony revealed that respondent's principal was aware, prior to his purchase of the property, that he was entitled to receive $500 per month from the owner of

[4]In a mandatory settlement conference statement, respondent also contended that public records did not "clearly notify" buyers of the property of their maintenance burden because the CC&R's identified the parcels as "Parcels A and B" whereas the legal description of the property identified them as "Parcels 1 and 2." This contention has apparently been abandoned.

parcel 1 for maintenance which respondent was to perform on the property. The broker for respondent's predecessor in interest testified that before the close of escrow he gave respondent's real estate agents a copy of the CC&R's and explained to them that the $500 fee would not cover the maintenance expenses. The real estate agents who represented respondent in the transaction testified that respondent's president was provided with a copy of the CC&R's (which they called "the sweeping agreement") prior to the close of escrow.

Respondent's president testified, with the assistance of a Japanese interpreter, that respondent paid $5.2 million for the property and had recently sold it for $8.5 million.[5] He admitted that they had received payments of $500 per month from appellant until the commencement of this litigation, but testified that based upon what his real estate agents told him he thought it was a "sweeping cleaning fee for the common area, the garage . . . ."

After appellant rested, respondent moved for judgment pursuant to Code of Civil Procedure section 631.8 on the ground that appellant could not prevail on any of the causes of action alleged in the complaint.[6]

The trial court reasoned that respondent was entitled to judgment on the first cause of action for breach of contract because there was no "privity of contract" between it and appellant. As to the second cause of action for declaratory relief and the fifth cause of action for a finding that mutual equitable servitudes exist, the court found the CC&R's did not run with the land because there was no evidence that "express reference to the CC&Rs is contained within the first deed from the common owner of the land parcels legally described in the CC&Rs to each of the initial transferees of the parcels involved." The court also found no evidence suggesting that the Hirts took title to parcel 2 subject to the CC&R's. Judgment was granted against appellant on the third cause of action for impress and foreclosure of equitable lien because the trial court found there was no evidence that respondent intended to assume any obligation of maintenance or any other obligation under the CC&R's and the CC&R's did not run with the land and therefore were not binding on respondent. As to the fourth cause of action for benefit conferred, the court found no evidence that appellant conferred a benefit upon respondent, the CC&R's did not run with the land and were not binding on respondent and there was no contractual obligation owed by

---

[5] During the pendency of this action, respondent Rikuo deeded the property to Core Investment Corporation on December 27, 1988. In its trial brief, respondent contended appellant failed to join this necessary party.

[6] Respondent also moved to dismiss on the ground of jurisdictional defect, but the trial court did not reach that issue, and no such issue is raised in this appeal.

respondent to appellant for performance of any of the "purported maintenance obligations found in the provisions of the CC&R's."

The parties agree that these rulings were made pursuant to Code of Civil Procedure section 631.8 upon undisputed facts. Therefore, we are not bound by the trial court's finding, but instead are required to make an independent determination in accord with the applicable principles of law. (*Torrey Pines Bank* v. *Hoffman* (1991) 231 Cal.App.3d 308, 317 [282 Cal.Rptr. 354]; *Jongepier* v. *Lopez* (1983) 142 Cal.App.3d 535, 538 [191 Cal.Rptr. 131]; *Greater Middleton Assn.* v. *Holmes Lumber Co.* (1990) 222 Cal.App.3d 980, 990 [271 Cal.Rptr. 917].)

I

There is no question but that Mr. Weiss, the original common owner, intended the CC&R's to run with the land for the mutual benefit of the two parcels which he created; he said so more than once in the document which created the CC&R's. He also declared that they were established under applicable law including Civil Code section 1468. He acted in a manner consistent with that intent when he sold parcel 1 to Downey Savings and Loan. The grant deed recited that the conveyance was subject to the "Declaration of Establishment of Protective Covenants, Conditions, and Restrictions and Grants of Easements, dated May 29, 1975, and recorded on May 30, 1975, as Instrument No. 4463, . . ."

There is also no question but that respondent took title to parcel 2 with both constructive and actual notice of the CC&R's. The source of the constructive notice was the deed's reference to exhibit A which, in turn, stated that the deeded property was subject to "all Covenants, Conditions, and Restrictions and Easements of Record against the above-described Real Property." The source of the actual notice was information given to respondent's president prior to the close of escrow. Therefore, there was ample evidence that respondent's principals were well aware of the CC&R's at the time of the purchase of the property.

The issue, therefore, is whether respondent was entitled to be relieved from the CC&R's under the circumstances of this case. The answer to this question is in the negative either if the covenants run with the land or if they constitute equitable servitudes upon the land. (*B.C.E. Development, Inc.* v. *Smith* (1989) 215 Cal.App.3d 1142, 1146 [264 Cal.Rptr. 55].)

Covenants run with the land only if they are specified in the Civil Code or incidental to those specified in the code. (Civ. Code, § 1461.) Covenants for

the direct *benefit* of the property run with the land if they are "contained in a grant . . . ." (Civ. Code, § 1462.)[7] Covenants which impose a burden upon the land run with the land if a written instrument between a grantor and a grantee or between owners of separate property meets all of the following requirements: (1) it must include a particular description of the land of the covenantor and the land of the covenantee; (2) it must state expressly that successive owners of the land are to be bound by the covenant for the benefit of the land owned by or granted to the covenantor and the land owned by or granted to the covenantee; (3) it must establish a covenant which relates to the use, repair, maintenance or improvement of, or payment of taxes and assessments on, such land or some part thereof; and (4) it must be recorded in the county where the property is situated. (Civ. Code, § 1468.)

▉ Although the document recorded by Martin Weiss met each of these specific requirements, it was not an instrument between the owners of separate properties, i.e., Mr. Weiss still owned both parcels. Thus, the recordation of the CC&R's did not, in and of itself, create covenants running with the land under Civil Code section 1468.

Therefore, we look first to the deed from Weiss to Downey Savings to determine whether it satisfies the basic requirement of Civil Code section 1468. The deed by which Downey Savings took title stated that the conveyance was "subject to" the declaration previously recorded by Mr. Weiss. "There is no requirement that both parties sign the covenant for it to be enforceable. [Citation.]" (*Oceanside Community Assn.* v. *Oceanside Land Co.* (1983) 147 Cal.App.3d 166, 175 [195 Cal.Rptr. 14].) Thus, it appears from the deed that both Mr. Weiss as grantor and Downey Savings as grantee jointly intended to be bound by the CC&R's.[8] There is, nevertheless, one case which questions whether this recital is sufficient to create a covenant running with the land pursuant to Civil Code section 1468. *Russell* v. *Palos Verdes Properties* (1963) 218 Cal.App.2d 754, 767 [32 Cal.Rptr. 488], observes that a "subject to" clause cannot create valid covenants running

---

[7]Until 1968, they were the only covenants which ran with the land; a covenant which imposed a burden upon the land was enforceable only where "privity of estate" existed. (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 490, p. 667.) In 1968 and 1969 Civil Code section 1468 was amended to make the burden of the grantor's covenants run with the land, as well as those between owners in fee. A subsequent amendment in 1969 also made the burden of the grantee's covenants run with the land (*ibid.*) if the requirements of the statute were met.

[8]For this reason, this case is distinguishable from *Scaringe* v. *J. C. C. Enterprises, Inc.* (1988) 205 Cal.App.3d 1536 [253 Cal.Rptr. 344], in which Division Five concluded the CC&R's did not run with the land in the absence of a written instrument expressing the joint intent of the grantor and the grantee that the grantee's title would be subject to the CC&R's for the benefit of the other lots and that the developer's subsequent grantees would be bound for the benefit of the first grantee's lot. (205 Cal.App.3d at p. 1546.)

with the land "when none before existed . . . ." *Russell* is the only case which our research has disclosed that advances this theory and it does so without supporting authority.

In any event, appellant contends that *Russell* is factually distinguishable from the case before us and that the statement discussed above is dicta. We agree. The court in *Russell* noted that there had been no attempt in that case to enforce any restrictions as covenants running with the land. The issue to be decided was simply whether a restrictive covenant was enforceable in equity. (218 Cal.App.2d at pp. 761-762.) Therefore, we conclude *Russell*'s dicta presents no legal impediment to our conclusion that the Weiss-Downey deed evidenced their joint intent to be bound by the CC&R's.

For these reasons, it appears the deed from Weiss to Downey Savings was sufficient, together with the previously recorded CC&R's, to create a covenant running with the land pursuant to Civil Code section 1468.

■ A covenant running with the land is binding upon all subsequent purchasers of the covenantor's property (Civ. Code. § 1468), including a foreclosure sale purchaser. (Civ. Code, § 1468; *Oceanside Community Assn. v. Oceanside Land Co., supra,* 147 Cal.App.3d at pp. 173, 175; 7 Miller & Starr, Current Law of Cal. Real Estate (2d ed. 1990) Covenants and Restrictions, § 22.3, pp. 537-538.) ■ It follows that the trial court erred in granting respondent's motion for judgment on the second, third, fourth and fifth causes of action on the ground that the CC&R's did not run with the land.

## II

Our conclusion that the covenants run with the land may not be entirely dispositive of this case. There are situations in which breach of a covenant, though enforceable, will not be adequately remedied by an award of damages. (4 Witkin, Summary of Cal. Law, *supra,* Real Property, § 493, p. 670.) Therefore, we turn to the issue of whether the CC&R's created enforceable mutual equitable servitudes.

The concept of equitable servitudes arose during the time (prior to the amendment of Civil Code section 1468 in 1968 and 1969) when California law provided that covenants which burdened property did *not* run with the land. The doctrine was judicially established in response to the fact that under statutory law, as it existed at that time, it was impossible to control land use and development by means of private restrictions. (7 Miller & Starr, Current Law of Cal. Real Estate, *op. cit. supra,* Covenants and Restrictions,

§ 22.5, p. 540.) The California Supreme Court addressed and approved the doctrine in *Werner* v. *Graham* (1919) 181 Cal. 174 [183 P. 945], in which the court acknowledged that although equitable servitudes were unknown to the common law and not established by statute, they were nonetheless enforceable if the owner of a subdivided tract conveyed the various parcels in the tract "by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit." (*Werner* v. *Graham, supra,* at p. 183.)

Case law has established several requirements for the creation of an enforceable equitable servitude. ■ Generally, equitable servitudes must be created by a recorded deed or written agreement between landowners; the dominant tenement to be benefited by the restrictions must be described; the intent of both parties (the common grantor and the initial grantee) to create a common general plan of restrictions must be demonstrated; and a subsequent grantee must have record or actual notice of the restriction when he receives title to the property. (7 Miller & Starr, Current Law of Cal. Real Estate, *op. cit. supra,* Covenants and Restrictions, §§ 22.7 to 22.12, pp. 546-557.) Equitable servitudes are also required to be strictly construed. (*Wing* v. *Forest Lawn Cemetery Assn.* (1940) 15 Cal.2d 472, 479 [101 P.2d 1099, 130 A.L.R. 120].)

One commentator has suggested that it is unnecessary to employ the doctrine of equitable servitudes in order to obtain judicial enforcement of valid covenants and restrictions created after the amendment of Civil Code section 1468 in 1968. (See 7 Miller & Starr, Current Law of Cal. Real Estate, *op. cit. supra,* Covenants and Restrictions, § 22.1, p. 530; and *id.,* § 22.3, p. 535 [referring to the statutory amendment as an abrogation of the common law rules which had been in effect prior thereto].) Courts continue to use the doctrine as an alternative basis for enforcement, however, where the restrictions are not valid under the statute. (*B. C. E. Development, Inc.* v. *Smith, supra,* 215 Cal.App.3d at p. 1146.) Many of the arguments asserted by respondent, although phrased as reasons why the covenants do not run with the land, actually cite case law concerned with equitable servitudes. Therefore, we briefly discuss each of respondent's many contentions in support of its assertion that the CC&R's are not enforceable.

■ Respondent contends that since the initial conveyance of parcel 2 from the trustee in bankruptcy to the Hirts contained no reference to the CC&R's, they are not enforceable against subsequent owners of parcel 2. This contention raises an issue upon which a split of authority exits. That split has been concisely described by a leading commentator as follows:

"When a declaration of restrictions is recorded which describes multiple lots in a subdivision, it is not clear whether the restrictions are enforceable against each lot in the subdivision merely by reference to the restrictions in the first deed to the first lot (the 'first deed only' theory), or whether it is necessary that the restrictions be referred to in the first deed to each of the lots (the 'all first deeds' theory)." (7 Miller & Starr, Current Law of Cal. Real Estate, *op. cit. supra*, Covenants and Restrictions, § 22.8, pp. 549-550.)

We need not resolve this conflict in this case. The evidence which we have recited, *ante*, demonstrates that the initial grantees of *both* parcels 1 and 2 were aware of, accepted, and intended to be bound by the CC&R's. Although the deed from the trustee in bankruptcy did not specifically reference the CC&R's, it did reference an order of the bankruptcy court, and the stipulation mentioning the CC&R's was filed simultaneously with the deed executed by the trustee. This evidence supports the reasonable inference that these documents in combination constitute a "writing" sufficient to create an enforceable equitable servitude. It also constitutes sufficient evidence of the Hirts' intent to be bound by the CC&R's. (Cf. *Sain v. Silvestre* (1978) 78 Cal.App.3d 461, 473 [144 Cal.Rptr. 478], in which there was no evidence that the purchaser at a trustee's sale consented to the establishment of the restrictions.)

Respondent contends that it took the property free and clear of the CC&R's (despite language in its deed referring to "all Covenants, Conditions, and Restrictions and Easements of Record") because the CC&R's had been cut off by intervening bona fide purchasers prior to the time it purchased the land. To the extent this contention is a repetition of the issue discussed above, we need not repeat ourselves. To the extent the contention urges that "notice" is irrelevant to enforcement of the CC&R's as equitable servitudes, it is wrong. ■ Notice, or the lack thereof, is relevant to the most basic requirement for enforcement of equitable servitudes, that their enforcement must be equitable. (*Russell v. Palos Verdes Properties, supra,* 218 Cal.App.2d at p. 763; *Trahms v. Starrett* (1973) 34 Cal.App.3d 766, 771 [110 Cal.Rptr. 239].)

■ Respondent contends the CC&R's are not enforceable because they are ambiguous. This argument is predicated upon language in the written declaration which established the CC&R's which provides that "each covenant to do or refrain from doing some act on the Shopping Center . . . [r]uns with both the land owned by the covenantor and the land owned by the covenantor . . . ." This language must be interpreted in the context of the facts which existed at the time the document was executed. At that point, both parcels *were* owned by the covenantor. While clearer language could

have been used, we see no fatal ambiguity in the language actually employed.

■ Respondent contends that the CC&R's lack mutuality and reciprocity. In support of this contention respondent relies upon authorities holding that in order to be enforceable, equitable servitudes must be of mutual and reciprocal benefit to all of the subdivided parcels. (See, e.g., *Terry* v. *James* (1977) 72 Cal.App.3d 438 [140 Cal.Rptr. 201].) Respondent argues that the CC&R's in this case merely "impose a huge financial burden on Parcel 2, for the financial benefit of Parcel 1." This contention apparently assumes that it is not possible for this "financial burden" to be outweighed by the benefit of owning commercial property adjacent to property occupied by a large, well-known store. In any event, this is a matter to be proven as an affirmative defense.

Respondent contends that appellant's claim for an equitable lien on a "benefit conferred" theory has no basis in law or fact. This contention is predicated upon the faulty premise that respondent "never had a duty to perform the maintenance . . . ." Therefore, it requires no further discussion.

In short, it appears that the CC&R's may also be enforced as equitable servitudes, if the trial court concludes, after hearing the evidence in support of respondent's affirmative defenses, including changed circumstances (see *Robertson* v. *Nichols* (1949) 92 Cal.App.2d 201, 207 [206 P.2d 898]), it would be equitable to do so. We express no opinion on the ultimate outcome, leaving it to the trial court to exercise its broad powers to fashion an equitable remedy. (*Oceanside Community Assn.* v. *Oceanside Land Co.*, *supra*, 147 Cal.App.3d at p. 177.)

Having concluded that the CC&R's ran with the land and may also be enforced as equitable covenants, we turn, briefly, to the remaining grounds upon which judgment was granted. ■ The trial court granted judgment on the first cause of action for breach of contract on the ground that there was no privity between appellant and respondent. In its written briefs, appellant made no argument that the trial court erred in this regard. At oral argument, appellant's counsel argued that lack of privity between the parties is irrelevant in this case because respondent accepted the monthly $500 payments. Counsel urged that under these circumstances, Civil Code section 1589 ("A voluntary acceptance of the benefits of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.") and Civil Code section 3521 ("He who takes the benefit must bear the burden.") support the conclusion that the trial court erred in granting judgment on the first cause of action.

■ While we normally do not entertain issues raised after the filing of the opening brief (see *Balboa Ins. Co.* v. *Aguirre* (1983) 149 Cal.App.3d 1002, 1010 [197 Cal.Rptr. 250]; *West* v. *Henderson* (1991) 227 Cal.App.3d 1578, 1585, fn. 5 [278 Cal.Rptr. 570]), we exercise our discretion to do so in this case in light of the procedural posture of the case, with respondent having not yet presented its defense. ■ We conclude appellant's contentions based on an implied contract theory are well taken and that the trial court erred in finding privity to be the controlling issue on the first cause of action.

As to the fourth cause of action for benefit conferred, the trial court granted judgment on the grounds that no benefit had been conferred, the CC&R's did not run with the land and respondent had no contractual obligation to appellant. That judgment cannot be sustained on the second and third grounds for the reasons previously stated herein. ■ Thus, the remaining issue is whether there is evidence of benefit conferred sufficient to overcome a motion for judgment pursuant to Code of Civil Procedure section 631.8. Appellant's written briefs made only a terse argument, unsupported by authority, on this issue. At oral argument, appellant's counsel argued that appellant had paid for the striping of the parking lot, an obligation of respondent under the CC&R's, and that this demonstrates a benefit conferred upon respondent.

We conclude this evidence in combination with the fact that respondent accepted $500 a month to maintain the common areas was sufficient to survive a motion for judgment pursuant to Code of Civil Procedure section 631.8.

For the foregoing reasons, the judgment entered in favor of respondent is reversed and the matter is remanded for further proceedings in accord with this opinion. Appellant to recover its costs on appeal.

Epstein, J., and Hastings, J., concurred.

A petition for a rehearing was denied May 25, 1994, and respondent's petition for review by the Supreme Court was denied July 14, 1994.