[No. B058458. Second Dist., Div. Seven. Feb. 19, 1992.]

NUTRO PRODUCTS, INC., Plaintiff and Respondent, v.
COLE GRAIN COMPANY et al., Defendants and Appellants.

**COUNSEL**

Ward, Kroll & Jampol, Gerald L. Kroll, Alan R. Jampol, Thomas Y. Lucero, Kroll & Levitt and Gideon E. Mark for Defendants and Appellants.

Gibson, Dunn & Crutcher, William E. Wegner, Jeffrey C. Briggs, Timothy G. Fielden and James M. Gelb for Plaintiff and Respondent.

**OPINION**

**WOODS (Fred), J.**—In this trademark infringement action we conclude that substantial evidence supports the trial court's issuance of a preliminary injunction. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Respondent is a manufacturer of high-quality pet food. For over 60 years it has marketed its products under the trademark "Nutro." In 1985 it began marketing a new product under the mark "Nutro Max" which featured a chicken, rice, and lamb formula. Instead of selling its product in supermarkets, "Nutro Max" was only sold in pet stores, pet supply stores, and specialty shops.

In October or November 1989 appellants entered the quality pet market with a product which also featured chicken, rice and lamb. It also was exclusively distributed to pet stores, pet supply stores, and specialty shops. Respondents called its product "Nutrix."

When respondent learned that "Nutrix" was being sold in certain markets outside California it notified appellants that "Nutrix" infringed its "Nutro" trademark. Later, in May 1990, respondent learned "Nutrix" was being distributed in southern California, respondent's major market. The next month, on June 12, 1990, it filed the instant trademark infringement and unfair competition action. Respondent (Nutro) sought but was denied a temporary restraining order. In February 1991 respondent moved for a preliminary injunction. Affidavits, declarations, and supporting exhibits were filed. Appellants opposed the motion, also filing supporting declarations and exhibits. Hearings were held on April 30, 1991, and May 6, 1991. On May 22, 1991, the trial court filed its preliminary injunction enjoining appellant from selling "Nutrix" pet food. This appeal followed.

CONTENTIONS

Appellants contend:

1. Nutro failed to demonstrate that it was threatened with irreparable injury.

2. Nutro failed to demonstrate a reasonable probability of success on the merits.

3. Nutro's motion should have been denied because Nutro came into court with unclean hands.

4. Nutro failed to demonstrate that the balance of hardships tipped in its favor.

5. The unlimited geographic scope of the preliminary injunction in this action reflects a clear abuse of discretion.

DISCUSSION

*Standard of Review*

■ The purpose of a preliminary injunction "is to preserve the status quo until a final determination following a trial." (*Scaringe* v. *J.C.C. Enterprises, Inc.* (1988) 205 Cal.App.3d 1536, 1542 [253 Cal.Rptr. 344].) It "does not constitute a final adjudication of the controversy." (*Ibid.*)

■ "The law is well settled that the decision to grant a preliminary injunction rests in the sound discretion of the trial court." (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].) In exercising discretion "trial courts should evaluate two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued." (*Id.* at pp. 69-70.)

"The party challenging the injunction bears the burden of showing an abuse of discretion." (*Scaringe* v. *J.C.C. Enterprises, Inc., supra,* 205 Cal.App.3d 1536, 1542.) "A trial court will be found to have abused its discretion only when it has ' "exceeded the bounds of reason or contravened the uncontradicted evidence." ' " (*IT Corp.* v. *County of Imperial, supra,* 35 Cal.3d 63, 69.)

"On appeal we examine the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in favor of the trial court's order." (*Triple A Machine Shop, Inc.* v. *State of California* (1989) 213 Cal.App.3d 131, 138 [261 Cal.Rptr. 493].)

1. *Appellants contend Nutro failed to demonstrate that it was threatened with irreparable injury.*

Appellants offer two arguments.

■ First, appellants argue that "[s]ignificant delay in seeking preliminary injunctive relief demonstrates an absence of the irreparable injury necessary to obtain such relief." And respondent, by waiting 15 months from discovery to injunction application, was guilty of such significant delay.

Appellants' position before the trial court was less absolute. When asked if the instant delay precluded an irreparable harm finding "as a matter of law" appellants responded: "I'm *not* saying there can't be." When further pressed by the trial court appellants conceded that the instant delay was merely "evidence" and not "an absolute bar."

For several reasons, in our view, the trial court was entitled to consider delay as merely one of many factors bearing on irreparable injury. E.g., the *extent* of delay was disputed. Although appellants contend the delay period began in October 1989, respondent suggested a more appropriate starting time is May 1990, when appellants began selling "Nutrix" in respondent's major market, Southern California. Moreover, the trial court may have relied on evidence that appellants had agreed "that the passage of time from the temporary restraining order hearing until the preliminary injunction hearing will not be used by the defendants to argue unreasonable delay, laches, or any other grounds on which to resist injunctive . . . relief." Additionally, the trial court was entitled to consider that substantial time was devoted to discovery, having an independent market survey conducted, and otherwise obtaining proof of threatened irreparable injury.

Second, appellants argue respondent "acknowledged lack of lost profits" and "agreed to amend its complaint to delete its allegation that it has lost profits as a result of appellants' conduct. This concession demonstrates an absence of irreparable injury."

Appellants are both factually and legally mistaken. The only reference in the record to such an "agreement" is in appellants' own memorandum in opposition to the preliminary injunction, neither an affidavit nor declaration

and not constituting evidence before the trial court. The complaint, un-amended, contains a prayer for lost profits. But even if respondent had not *yet* lost profits that does not mean it *would* not lose them. ■ The function of a preliminary injunction is not merely to contain ongoing damage but to prevent prospective damage. To that end a trial court "must exercise its discretion 'in favor of the party most likely *to be* injured.'" (*Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695], italics added.)

Appellants' contention is not well taken.

2. *Appellants contend Nutro failed to demonstrate a reasonable probability of success on the merits.*

Again, appellants make two arguments to support their contention.

■ The first is that respondent failed to demonstrate that "Nutro" or "Nutro Max" is a protectable trademark.

■ "Only those marks which are distinctive are permitted to be appro-priated by one business to the exclusion of all others. 'Distinctiveness,' in the terminology of trademark law, is the capacity of a mark to distinguish a product or service which emanates from one source, from products or services emanating from other sources. Distinctiveness in this sense implies three characteristics: one, that the mark is sufficiently unique (i.e., different from marks used by others in connection with similar or related goods or services) to distinguish one from the other, two, that the mark does not describe or signify characteristics which the designated goods or services share with those emanating from other sources; and three, that the mark is recognizable as an indicium of source, rather than as a decorative symbol or pattern or as a sample of text conveying information other than source identity.

"It is essential that a trademark be distinctive." (3 Callmann, The Law of Unfair Competition, Trademarks & Monopolies (4th ed. 1983) § 18.01, p. 2 [hereafter Callmann].)

■ Appellants assert that respondent's product name is merely *descriptive, not* distinctive, and thus not protectable.

"But there is no magic formula for distinctiveness. Every case must be decided on its facts, and it is the reaction of the public to the mark that is dispositive." (3 Callmann, *supra*, § 18.01, p. 3.)

Substantial evidence supports the trial court's finding that respondent's product name is suggestive rather than descriptive, and is therefore protectable. For example, respondent submitted numerous customer letters referring to its product name; respondent spent $9 million over five years advertising "Nutro Max," respondent had used its "Nutro" name for approximately sixty years, and of course, the name itself is *not* "an ordinary English word in everyday usage." (3 Callmann, *supra,* § 18.01, p. 2.)

■ Alternatively, appellants argue that even if respondent's product name is protectable, respondent failed to prove a likelihood of confusion between respondent's and appellants' product names. We disagree.

Substantial evidence supports the trial court's finding[1] of likelihood of confusion. Evidence included the declaration of Robert J. Lavidge, president emeritus of a leading marketing research company. He was retained by respondent to determine whether there is confusion in the marketplace between the two product names. His declaration fully described a double blind, customer intercept survey conducted in four different California malls involving two hundred adult pet owners. Each survey participant was first shown a "Nutra Max" display and then, in a different room, shown a display of several other pet food products, including "Nutrix."

According to Mr. Lavidge's analysis of the resulting survey questionnaires, 23.5 to 27 percent of those surveyed were confused. Such surveys "may be the most practical proffer with respect to a sampling of public reaction." (3 Callmann, *op. cit. supra,* § 20.63, p. 518.)

It was also established that appellants, just as respondent had done, limited its distribution to specialty pet stores. "Where goods flow through the same channels of trade, particularly if they are sold in the same stores . . . they have been held confusingly similar." (3 Callmann, *supra,* § 20.54, p. 434.)

Other evidence included several actual incidents of both retail store owner and customer confusion.

■ Additionally, the trial court was entitled to consider that "the *ultima ratio* in cases of doubt is the principle that, as between a newcomer, who by provoking confusion has nothing to lose and everything to gain, and one who by honest dealing has already achieved favor with the public, any doubt should be resolved against the newcomer; the field from which he could have selected his own distinguishing mark to indicate the origin of his product is practically infinite." (3 Callman, *supra,* § 20.08, p. 38.)

---

[1] Contrary to appellants' assertion, we do not regard "likelihood of confusion" as reviewable de novo.

"A boundless choice of words, phrases and symbols is available to one who wishes a mark to distinguish his product or service from those of others. Where a defendant selects from this practically unlimited field a trademark confusingly similar to the mark publicly associated with the plaintiff's product, then it would appear that the defendant made the particular choice in order to trade upon the plaintiff's established reputation." (3 Callmann, *supra*, § 20.50, p. 396.) " 'Of course, few would be stupid enough to make exact copies of another's mark or symbol. It has been well said that the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts." (*Id.*, § 20.08, p. 42.)

Appellants' contention is without merit.

3. *Appellants contend Nutro's motion should have been denied because Nutro came into court with unclean hands.*

Appellants claim that respondent engaged in misleading advertising and, relying upon *Pond* v. *Insurance Co. of North America* (1984) 151 Cal.App.3d 280 [198 Cal.Rptr. 517], "the doors of the court [should] be shut against him." (*Id.* at p. 290.)

We are satisfied the trial court, *if* it believed there had been misleading advertising, could have relied upon the following qualification to the "clean hands" doctrine.

"The rule is qualified by the requirement that the party against whom the doctrine is sought to be invoked directly 'infected' the actual cause of action before the court, and is not merely guilty of unrelated improper past conduct. [Citation.] The actions of the party alleged to have soiled hands must relate 'directly to the transaction concerning which the complaint is made; i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants.' " (151 Cal.App.3d at p. 290.)

4. *Appellants contend Nutro failed to demonstrate that the balance of hardships tipped in its favor.*

We conclude substantial evidence supports the trial court's finding that the balance of hardship favored respondent.

There was evidence "Nutrix" was losing money but "Nutra Max" was making money; evidence that "Nutrix" was "new and not yet widely known" while "Nutra Max" was established and well known.

In the words of the trial court, articulating respondent's argument: " 'We're not obligated to show a direct economic loss matched in some set-to-set comparison with the other side's behavior. What we're showing [are] the inescapable aspects of infringement like, for example, dilution, confusion, slowing down, or potential slowing down over what would be the line of ascent of our product's success. . . .' "

5. *Appellants contend the unlimited geographic scope of the preliminary injunction in this action reflects a clear abuse of discretion.*

■ There was evidence before the trial court that respondent sold its "Nutra Max" products throughout the United States and that of the 15,000 nongrocery pet food outlets in the country approximately 5,000 sold "Nutra Max."

Based upon this evidence the trial court did not abuse its discretion by not geographically limiting its preliminary injunction.

DISPOSITION

The order is affirmed. Costs on appeal are awarded to respondent.

Lillie, P. J., and Johnson, J., concurred.