Filed 11/15/13  Martens v. Robinson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DONNA MARTENS,<br><br>Petitioner and Respondent,<br><br>v.<br><br>ANNETTE RAE ROBINSON,<br><br>Objector and Appellant. | D063024<br><br><br>(Super. Ct. No. 37-2009-00151849-PR-TR-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, John Meyer, Judge.  Affirmed.


Annette Rae Robinson, in pro. per.; Southern California Realty Law, Shanna E. Welsh; and J. Kent Holland for Objector and Appellant.

Higgs, Fletcher & Mack, Victoria E. Fuller; and Barbara L. Richards for Petitioner and Respondent.

Annette Rae Robinson appeals from a judgment on a petition brought by Donna Martens, invalidating an amendment to decedent William R. Kuhner's trust and

disqualifying Robinson as a transferee of the trust's assets. Robinson contends that the trial court erred in rejecting her argument that Martens's claims are barred by the doctrine of unclean hands. We conclude that Robinson has failed to provide an adequate appellate record to support her contention, and accordingly we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Kuhner executed a declaration of living trust in 2006 (the 2006 Trust), leaving his real and personal property to his daughter, Martens, who was to become the successor trustee upon Kuhner's death. In March 2009, Kuhner was diagnosed with end-stage congestive heart failure. He was given a life-expectancy of less than six-months and required 24-hour care. Martens hired Robinson to provide care for Kuhner in his own home. Robinson was a neighbor and had been friends with Kuhner since 1999.[1]

As the trial court found in its statement of decision, Kuhner was forgetful and confused while Robinson was caring for him and was susceptible to undue influence. An evaluation by a physician on May 20, 2009, concluded that Kuhner lacked capacity to handle his finances.

Robinson had unlimited control over Kuhner's financial accounts and took frequent distributions for herself in excess of the agreed-upon rate for caregiving. Shortly after she was hired as Kuhner's caregiver, Robinson began taking Kuhner to meetings

---

[1] Because Robinson has provided us with neither a reporter's transcript of the evidence presented at trial, nor copies of most of the trial exhibits, we base our factual recitation on the trial court's statement of decision and the few trial exhibits contained in the appellate record.

2

with attorneys for the purpose of amending the 2006 Trust. On June 18, 2009, Robinson prepared a quitclaim deed purporting to transfer Kuhner's home to Robinson, but that deed was ineffective because the home was owned by Kuhner's trust, not Kuhner individually.

On June 30, 2009, while Robinson was present, Kuhner executed an amendment to the 2006 Trust (the 2009 Trust Amendment) that disinherited Martens, made a gift of $20,000 to Robinson, left all of Kuhner's real and personal property to Robinson, and made Robinson the successor trustee upon Kuhner's death. Kuhner died on July 14, 2009, two weeks after the 2009 Trust Amendment was executed.

Three days after Kuhner's death, Martens, as successor trustee of the 2006 Trust, filed a petition in superior court to determine the trust's assets. The petition contained allegations about Robinson's attempt, in June 2009, to quitclaim Kuhner's home to herself, but the petition contained no mention of the 2009 Trust Amendment. It is not clear from the appellate record whether Martens was aware of the 2009 Trust Amendment at the time she filed the petition.

According to a trial exhibit that appears in the appellate record, on July 23, 2009, Martens — as successor trustee under the 2006 Trust — recorded a quitclaim deed of Kuhner's home transferring the home to herself as an individual.[2]

---

[2] As we do not have the reporter's transcript of the evidence portion of the trial or a full copy of the clerk's minutes, it is not clear whether the July 23, 2009 quitclaim deed was received into evidence. The sticker on the copy of the document appearing in the appellate record indicates only that the document was identified as court's exhibit No. 44-0; it does not indicate that the exhibit was received into evidence.

3

In October 2009, Martens filed a second petition, which expressly sought to adjudicate the invalidity of the 2009 Trust Amendment and to disqualify Robinson from obtaining any of the trust assets.[3]

Trial commenced on August 17, 2012, with both Martens and Robinson represented by counsel. Closing arguments were made on August 28, 2012, after which the trial court orally delivered an intended statement of decision in favor of Martens. The only portion of the reporter's transcript that Robinson has provided for the appellate record is the transcript of the proceedings on August 28, 2012.

On October 2, 2012, the trial court filed a written statement of decision in favor of Martens, and judgment was entered accordingly. The trial court determined that (1) Robinson was a prohibited transferee of the trust assets because she was a care custodian as defined in the relevant statutes,[4] and did not meet her burden to prove by clear and convincing evidence that the 2009 Trust Amendment and the June 18, 2009 quitclaim deed were not products of undue influence or fraud; (2) a preponderance of the evidence established that the 2009 Trust Amendment and the June 18, 2009 quitclaim

---

[3]    It is unclear when Martens found out about the 2009 Trust Amendment, leading to the filing of the second petition. The appellate record contains a document marked with a sticker identifying it as court's exhibit number 46, but not indicating whether it was received into evidence. The document is a notice from Robinson, in her capacity as purported trustee under the 2009 Trust Amendment, giving notice of the trust and the time to contest it pursuant to Probate Code section 16061.7. The document was signed by Robinson on July 17, 2009, but it contains no indication of when or on whom it was served.

[4]    See Probate Code section 21350, subdivision (c) and Welfare and Institutions Code section 15610.17.

4

deed were the result of undue influence and fraud; (3) Kuhner lacked capacity to sign the 2009 Trust Amendment; and (4) Robinson wrongfully took $17,828.93 from Kuhner's assets that she was required to restore. The trial court invalidated the 2009 Trust Amendment, restored the 2006 Trust, removed Robinson as trustee, confirmed Martens as trustee, and ordered Robinson to vacate Kuhner's home.

Robinson filed a notice of appeal from the judgment.

II

DISCUSSION

Robinson's sole contention on appeal is that the trial court erred in determining that the doctrine of unclean hands did not bar Martens from prevailing in this action.

We begin by reviewing the legal principles applicable to a defense of unclean hands. "The defense of unclean hands arises from the maxim, '"'He who comes into Equity must come with clean hands.'"' [Citation.] The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim. [Citations.] The defense is available in legal as well as equitable actions. [Citations.] Whether the doctrine of unclean hands applies is a question of fact." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978 (*Kendall-Jackson*).)

"The misconduct that brings the unclean hands doctrine into play must relate directly to the cause at issue." (*Kendall-Jackson, supra*, 76 Cal.App.4th at p. 979.) "The misconduct 'must relate directly to the transaction concerning which the complaint is

5

made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants.' [Citation.] '[T]here must be a direct relationship between the misconduct and the claimed injuries . . . "'so that it would be inequitable to grant [the requested] relief.'"'" (*Ibid*.) "The misconduct must '"'prejudicially affect . . . the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief.'"'" (*Ibid*.) Under these standards, "[w]hether the particular misconduct is a bar to the alleged claim for relief depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries." (*Ibid*.)

Robinson argues that the doctrine of unclean hands applies here because Martens supposedly engaged in wrongful conduct, in her capacity as trustee of the 2006 Trust, when she recorded a quitclaim deed transferring Kuhner's home to herself as an individual on July 23, 2009, nine days after Kuhner's death. According to Robinson, this conduct constituted unclean hands because Martens had been removed as trustee by virtue of the 2009 Trust Amendment and thus had no authority to effectuate a transfer of the trust assets. At oral argument, Robinson argued that Marten acted with unclean hands because the quit claim deed was filed in violation of a provision in the 2006 Trust requiring that the trustee distribute personal property listed on a memorandum of personal property before addressing the rest of the trust assets, including real property.[5]

In line with some of her appellate theories, counsel for Robinson asserted during closing arguments that the doctrine of unclean hands applied because Martens knew that

---

[5]     We note that the personal property memorandum attached to the 2006 Trust lists no personal property.

the trust had been amended and "she then went and recorded a deed transferring the property from herself as the successor and trustee of the 2006 Trust to herself . . . . So it was a forged deed. She knew she wasn't the trustee; she's out there forging and filing a deed." As part of its intended statement of decision, the trial court stated that "there's no unclean hands on [Martens's] part."

As we will explain, Robinson has not provided an adequate appellate record to support the basic factual predicates of her argument that the doctrine of unclean hands applies. "'It is the duty of an appellant to provide an adequate record to the court establishing error. Failure to provide an adequate record on an issue requires that the issue be resolved against appellant. [Citation.]' [Citation.] This principle stems from the well-established rule of appellate review that a judgment or order is presumed correct and the appellant has the burden of demonstrating prejudicial error." (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.) "[A] record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the record he provides . . . , but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed." (*Uniroyal Chemical Co. v. American Vanguard Corp.* (1988) 203 Cal.App.3d 285, 302.) When an appellant "fail[s] to provide an adequate record, appellant cannot meet his burden to show error and we must resolve any challenge to the order against him." (*Hotels Nevada*, at p. 348.) Issues raised without the provision of an adequate appellate record for us to evaluate them are "deemed waived." (*Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003.)

7

Robinson's unclean hands argument assumes that Martens knew of the 2009 Trust Amendment when she filed the quitclaim deed on July 23, 2009, in her capacity as trustee. It also assumes that Martens filed the quit claim deed before distributing property identified in a personal property memorandum. However, because the reporter's transcript from the trial is limited to the proceedings on August 28, 2012, the record contains none of the trial testimony. Further, we have no information about which documents were received into evidence.[6] As we have explained, an evaluation of whether the doctrine of unclean hands applies requires a focus on "the nature of the misconduct" and "the relationship of the misconduct to the claimed injuries." (*Kendall-Jackson*, *supra*, 76 Cal.App.4th at p. 979.) Because Robinson has failed to provide us with any of the evidence from trial, she has failed to present any evidence relating to the issues that are crucial to her argument. By not supplying an adequate appellate record, Robinson has effectively waived her appellate argument that the trial court erred in not applying the doctrine of unclean hands.

---

[6]    At oral argument, counsel for Martens agreed that the 2006 Trust was entered into evidence. However, the 2006 Trust, without more, does not establish that Martens acted with unclean hands.

DISPOSITION

The judgment is affirmed.


                                                                   _____

                                                                                             IRION, J.

WE CONCUR:


_____

McCONNELL, P. J.


_____

O'ROURKE, J.