Filed 8/22/14  The Joint Equity Committee v. Genovese CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE JOINT EQUITY COMMITTEE, as Bankruptcy Representative, etc., | |
| Plaintiff and Appellant, | G048238 |
| v. | (Super. Ct. No. 30-2009-00295919) |
| MICHAEL GENOVESE et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Steven L. Perk, Judge.  Affirmed.

Engstrom Lipscomb & Lack, Walter J. Lack, Paul A. Traina, Jared W. Beilke and Steven J. Lipscomb for Plaintiff and Appellant.

Sedgwick, Curtis D. Parvin, Frederick B. Hayes and Douglas J. Collodel for Defendants and Respondents.

\*          \*          \*

The Joint Equity Committee For the Benefit of the Bankruptcy Estates of Real Estate Partners, Inc. and its related entities (plaintiff) appeals from a summary judgment awarded in favor of defendants Michael Genovese (Genovese) and Grant, Genovese & Baratta LLP (GGB; collectively defendants) on plaintiff's complaint for professional negligence, breach of fiduciary duty, and violation of Business and Professions Code section 17200. Plaintiff contends the trial court erred in granting summary judgment based on defendants' in pari delicto affirmative defense. We disagree and affirm.

## FACTUAL AND PROCEDURAL HISTORY

Real Estate Partners, Inc. (REP) is a real estate company. Between 2003 and 2006, REP raised more than $50 million from about 1,600 private investors through seven securities offerings. The investors lost all of their money.

In September 2007, REP was sued by the Securities and Exchange Commission (SEC) for securities fraud. The SEC lawsuit alleged REP's investment funds and salespeople were not properly registered, and its solicitation materials contained inaccurate and misleading statements.

In October 2007, REP and its related entities filed for bankruptcy. The bankruptcy trustee appointed plaintiff as the representative of the bankruptcy estates. Plaintiff and REP also executed and filed in the bankruptcy court a stipulation that purported to "transfer" standing to plaintiff to pursue REP's claims against various persons and entities.

In December 2008, plaintiff filed suit in the United States District Court against certain officers, directors and affiliates of REP, seeking to recover more than $50 million, based on an alleged scheme to defraud the investors by misrepresenting material investment terms, misappropriating investors' monies, engaging in self-dealing, and paying extravagant commissions.

2

In March 2009, plaintiff commenced adversary proceedings in the bankruptcy court against REP, seeking recovery of monies misappropriated in a fraudulent scheme, and alleging REP enticed investors to invest millions in unregistered securities, premised on fraudulent misrepresentations.

In August 2009, plaintiff filed this action against accountants and lawyers, including defendants, who provided professional services to REP. Genovese is a real estate transactional partner in GGB, a law firm.

In April 2010, plaintiff filed suit in the United States District Court against Coldwell Banker Real Estate Corporation and its affiliates, alleging CBC/REP, a Coldwell Bankers franchisee majority owned by REP, actively participated in a scheme to defraud approximately 1,600 investors.

In March 2011, plaintiff filed a second amended complaint in this action, alleging professional negligence, breach of fiduciary duty, and violation of Business and Professions Code section 17200. Defendants' answer asserted various affirmative defenses, including unclean hands and in pari delicto.

In August 2012, defendants moved for summary judgment on the second amended complaint, based on the "*in pari delicto* (also known as 'unclean hands')" affirmative defense, and on the alternative grounds that legal malpractice claims are not assignable. The motion was supported by a separate statement and a declaration from Genovese stating GGB was retained to prepare real estate transaction documents only, was not involved in any securities offerings, and only disbursed money from GGB's client-trust account pursuant to REP's express instructions. The motion was also supported by voluminous exhibits, including copies of private placement memoranda, correspondence and pleadings related to the SEC action, and pleadings from other actions in which plaintiff alleged REP engaged in securities fraud and other unlawful activities.

Plaintiff filed opposition to the motion, supported by a declaration from Dawson Davenport, REP's former president, a responsive separate statement, and objections to defendants' evidence.

Defendants filed a reply, also supported by a declaration from Davenport, who affirmed GGB was retained only as real estate counsel, was not involved in REP's securities offerings and fund raising activities, and accounted to REP for all funds deposited into GGB's client trust account.  And defendants responded to plaintiff's evidentiary objections.

In January 2013, the court granted summary judgment in favor of defendants based on the in pari delicto affirmative defense.  The court found: "Defendants have presented sufficient proof of the existence of the 'in pari delicto' defense. . . .  The burden of proof is, thus, shifted to plaintiff to present sufficient evidence of a triable issue.  [¶]  A triable issue is not created by the evidence submitted by the Joint Equity Committee . . . ."  This appeal followed.

**GENERAL PRINCIPLES AND STANDARD OF REVIEW**

A defendant may bring a motion for summary judgment on the ground there is a complete defense to the action.  (Code Civ. Proc., § 437c, subd. (*o*).)  The motion shall be granted if the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  (*Id*., subd. (c).)  Every element of the affirmative defense must be established.  (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 468.)  If the defendant meets that initial burden, then the burden shifts to the plaintiff to produce evidence showing a triable issue of material fact.  (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144.)  We review a summary judgment de novo.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)

4

## DISCUSSION

Plaintiff contends the court improperly relied on the allegations in the second amended complaint and in the three other actions it initiated. Plaintiff also contends defendants did not establish the elements of the in pari delicto affirmative defense, and there are triable issues regarding each element. We are not persuaded.

*1. Plaintiff's Judicial Admissions in the Second Amended Complaint*

"A defendant moving for summary judgment may rely on the allegations contained in the plaintiff's complaint, which constitute judicial admissions. As such they are conclusive concessions of the truth of a matter and have the effect of removing it from the issues." (*Uram v. Abex Corp.* (1990) 217 Cal.App.3d 1425, 1433; see *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 456.)

The court ruled defendants met their initial burden, based in part upon judicial admissions in the allegations of the second amended complaint. The court found: "In the pleadings of the 2d Amended Complaint is the admission by plaintiff that Real Estate Partners (REP) committed the wrongful acts and made fraudulent statements. (UMF [Unisputed Material Facts] #6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 21, 22, and 23)"

The relevant allegations are set out in paragraphs 23 through 44 of the second amended complaint, and may be summarized as follows: REP engaged in wrongful conduct including (1) offering and selling investments without proper SEC registration, (2) employing salespersons as broker-dealers without proper registration, (3) making fraudulent statements about REP's relationship to Coldwell Banker, (4) sending written materials to investors, including private placement memoranda, that contained misleading statements and numerous inaccuracies, (5) paying monies to REP insiders and outsiders in excess of the limits established in the private placement memoranda, (6) misusing investment proceeds, and (7) other improper conduct.

5

Plaintiff argues these allegations are not judicial admissions because they concern only "wrongful conduct consistent with professional negligence" on the part of defendants, not intentional or fraudulent conduct on the part of REP. However, plaintiff also concedes these allegations are "susceptible to the theory that REP acted mistakenly, or negligently."

What plaintiff fails to acknowledge is intentional or fraudulent conduct is not required for the in pari delicto defense. "Not every wrongful act constitutes unclean hands. But, the misconduct need not be a crime or an actionable tort. Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine. [Citations.]" (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 979.) Thus, even mistaken or negligent conduct on the part of REP is enough to bring the doctrine into play, since it "relate[s] directly to the cause at issue." (*Ibid*.) So the court did not err on this point.

*2. Plaintiff's Evidentiary Admissions in the Three Other Actions*

The court also ruled defendants met their initial burden, based in part upon the allegations of the pleadings in the 2008 and 2010 district court actions and in the 2009 bankruptcy court adversary proceedings. The court declared: "Evidentiary support for REP's commission of the wrongful acts is added by allegations in prior pleadings. (UMF 5, 6, 32, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49)" In each of these prior pleadings, plaintiff essentially alleged REP participated in what plaintiff itself characterized as a "scheme" to defraud investors.

Plaintiff correctly observes these allegations are rebuttable evidentiary admissions, not conclusive judicial admissions. An admission in a pleading is admissible against the pleader in a subsequent case. (*Dolinar v. Pedone* (1944) 63 Cal.App.2d 169, 176.) "The rationale underlying this principle is that the allegations of fact in a pleading are presumed to be those of the party, and are therefore accepted as admissions, subject to the right of the party to controvert them by showing that they were not authorized by him

6

or were made inadvertently or under a mistake of fact. [Citations.]" (*Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 707.)

And, because the person against whom the pleading is offered may "explain the admission and thereby, in effect, controvert it or at least avoid being held to the fact apparently admitted, reliance by a moving party on evidentiary admissions generally precludes summary judgment." (*Minish v. Hanuman Fellowship*, *supra*, 214 Cal.App.4th at pp. 457-458.) But plaintiff made no showing and does not even argue these admissions were unauthorized, inadvertent or mistaken. Instead, plaintiff avers these admissions were rebutted by "contrary evidence (consisting of a Declaration of Dawson Davenport and the testimony of Michael Genovese)." We disagree.

The Davenport declaration opposing GGB's motion for summary judgment merely stated REP did not engage in any fraudulent activity, and he relied on the advice of (unspecified) counsel in connection with REP's securities offerings.

With respect to this evidence, the court found: "The single declaration of Davenport is insufficient to rebut the culpability of REP in making false statements in the SEC filings and other acts alleged." This finding was correct for two reasons. First, the declaration conflicts with the conclusive judicial admissions discussed above. Second, judicial estoppel prevents plaintiff from now asserting a position contrary to the positions it previously took in this case and in the three other cases initiated by plaintiff. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.)

Plaintiff's reliance on Genovese's deposition testimony fares no better. Genovese testified that while he was representing REP, he did not believe it was violating securities laws or engaged in fraudulent activity. But his belief is immaterial. The uncontroverted Genovese declaration states he was not aware of and did not participate in any of REP's securities offerings or fundraising activities. Thus, Genovese's belief is insufficient to rebut plaintiff's admissions of REP misconduct.

7

*3. Defendants' In Pari Delicto Defense*

'"The doctrine of *in pari delicto* dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed *in pari delicto*, and the law will aid neither, but rather, will leave them where it finds them.' [Citation.]" (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1143, fn. 1.)

In pari delicto is an unclean hands defense, founded in the maxim that one who comes into equity must come with clean hands. (See generally, 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 9, pp. 289-290.) "This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." (*Precision Inst. Mfg. Co. v. Automotive M. M. Co.* (1945) 324 U.S. 806, 814.)

The defense was applied in *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 679-682 (*Peregrine*). While the *Peregrine* decision concerned an anti-SLAPP motion rather than a summary judgment motion, the underlying facts are analogous to this case. In an action arising from a collapsed Ponzi scheme, the Sheppard Mullin law firm (Sheppard) was sued by aggrieved investors and a bankruptcy trustee for some of the firm's former clients. Those former clients included Hillman and Fanghella, the individuals who planned the scheme; several funding entities which were used to perpetrate the scheme; and Peregrine, a corporation owned by Hillman, which was used to manage the funding entities. The action alleged professional negligence and breach of fiduciary duty, based on Sheppard's representation of its former clients in an action by the SEC.

The trial court denied Sheppard's anti-SLAPP motion and Sheppard appealed. In portions of the opinion not relevant here, the Court of Appeal held the claims arose out of partially protected activity, so the burden shifted to the plaintiffs to

8

show a reasonable probability of success on the merits. In that context, the court held, "Because Sheppard established the trustee's claims on behalf of Peregrine are barred by the unclean hands doctrine, plaintiffs did not establish a likelihood of prevailing on them . . . ." (*Peregrine*, *supra*, 133 Cal.App.4th at pp. 681-682.)

The *Peregrine* court's analysis of Sheppard's unclean hands affirmative defense is instructive. The court stated: "This issue requires us to address three questions: (1) whether Hillman and Fanghella's misconduct in running a Ponzi scheme can be imputed to the corporate entity Peregrine [citation]; (2) whether Peregrine's misconduct can be imputed to the bankruptcy trustee [citations]; and (3) whether the misconduct is sufficiently related to the causes of action asserted in this case [citation]." (*Peregrine*, *supra*, 133 Cal.App.4th at p. 679.) Answering yes to all three questions, the appellate court agreed "that Peregrine's claims present a classic case for the unclean hands defense." (*Id.* at p. 681.)

Furthermore, the *Peregrine* court observed, "Although plaintiffs are correct that application of this defense generally rests on questions of fact [citation], this does not mean the defense can never prevail at the pleading stage or on a motion to strike. Where, as here, a plaintiff's own pleadings contain admissions that establish the basis of an unclean hands defense, the defense may be applied without a further evidentiary hearing. [Citations.]" (*Peregrine*, *supra*, 133 Cal.App.4th at p. 681.)

Applying *Peregrine's* unclean hands defense analysis to the present case leads us to the same conclusions. To paraphrase the issues as framed in *Peregrine*, the applicability of this defense here requires us to address three questions: (1) whether the misconduct of the individuals can be imputed to the corporate entity REP (see *Casey v. U.S. Bank Nat. Assn.*, *supra*, 127 Cal.App.4th at p. 1143); (2) whether REP's misconduct can be imputed to plaintiff as the appointed representative of REP (see *Official Commitee v. R.F. Lafferty & Co.* (3d Cir. 2001) 267 F.3d 340, 356-357 (*Lafferty*); *In re Hedged-Investments Associates, Inc.* (10thCir. 1996) 84 F.3d 1281, 1284-1286); and (3) whether

9

the misconduct is sufficiently related to the causes of action asserted (*Kendall-Jackson Winery, Ltd. v. Superior Court*, *supra*, 76 Cal.App.4th at p. 979).

Here, as in *Peregrine*, "The first question is not complicated." (*Peregrine*, *supra*, 133 Cal.App.4th at p. 679.) It is settled California law that "[k]nowledge of an officer of a corporation within the scope of his duties is imputed to the corporation. [Citation.]" (*United California Bank v. Maltzman* (1974) 44 Cal.App.3d 41, 51-52.) "On the other hand, an officer's knowledge is not imputed to the corporation when he has no authority to bind the corporation relative to the fact or matter within his knowledge. [Citations.]" (*Meyer v. Glenmoor Homes, Inc.* (1966) 246 Cal.App.2d 242, 264.) Nor is a corporation "chargeable with the knowledge of an officer who collaborates with an outsider to defraud [the corporation]." (*Ibid.*)

This entire case, and the three other cases involving REP's securities offerings, are all based on REP's conduct in defrauding investors, misusing investor funds, violating securities laws, and causing investors to lose over $50 million. The judicial and evidentiary admissions discussed *ante* establish the misconduct was carried out by REP and the officers, directors, and other persons who dominated and controlled REP. Plaintiff has admitted these facts time and again. Furthermore, it is undisputed the officers had the authority to bind REP, and plaintiff offered no evidence any officer collaborated with outsiders to defraud REP. Thus, there is no triable issue on the first *Peregrine* factor—the misconduct of the individuals can be imputed to REP.

Plaintiff's purported distinctions of *Peregrine* on this point are unavailing. It is irrelevant that Davenport here, unlike Hillman in *Peregrine*, has not yet been charged with any crimes. It is equally irrelevant that in a 2007 letter to the SEC Davenport's then lawyer, Mr. Giovannone, placed some of the blame on an outsider, Michael Owens. This is not evidence of "collaboration" within the meaning of the authorities cited above and, in any event, is not evidence that REP itself rather than the investors were defrauded. And once again, although Genovese testified that while he was representing REP, he did

10

not believe it was violating securities laws or engaged in fraudulent activity, his belief is immaterial.

We also agree with defendants' alternative argument concerning the first *Peregrine* factor. It is probably not even necessary to analyze whether the misconduct of the individuals can be imputed to the corporate entity in this case. The reason is simple. In *Peregrine*, the first level imputation analysis was necessary because there were no admissions by the bankruptcy trustee that Peregrine itself (as distinguished from the individuals) had committed misconduct. By way of contrast here, plaintiff has repeatedly admitted that REP itself "participated in the scheme to defraud" and "defrauded the Victims . . . out of approximately $55 million."

"Our answer to the second question is also straightforward." (*Peregrine*, *supra*, 133 Cal.App.4th at p. 680.) Plaintiff is the appointed representative of REP's bankruptcy estate, and in that capacity acts in the place and stead of the trustee. Moreover, "'in actions brought by the trustee as successor to the debtor's interest . . . , the 'trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor. [Conversely, t]he trustee is, of course, subject to the same defenses [such as in pari delicto] as could have been asserted by the defendant had the action been instituted by the debtor.'" [Citations.]" (*Lafferty*, *supra*, 267 F.3d at pp. 356, 358-360.) And finally, the court-approved stipulation between REP and plaintiff "transferred" standing from REP's bankruptcy estate to plaintiff. Therefore, there is no triable issue on the second *Peregrine* factor either—the misconduct of REP can be imputed to plaintiff.

Turning to the third *Peregrine* factor, the asserted misconduct is sufficiently related to the matter currently before the court. (*Fibreboard Paper Products Corp. v. East Bay Union of Machinists*, *supra*, 227 Cal.App.2d at p. 728.) Plaintiff here has consistently taken the position REP orchestrated a massive fraudulent investment scheme that covered all aspects of REP's business. And the claims plaintiff asserted

11

against defendants are all based upon that same fraudulent scheme. In essence plaintiff contends defendants failed to protect REP from itself, thereby enabling REP to orchestrate the fraud.

Plaintiff admits all of the money deposited to or disbursed from defendants' client trust account was money REP obtained through the securities offerings, which were the cornerstone of REP's fraudulent scheme. Plus the allegations of the second amended complaint and plaintiff's verified discovery responses confirm the relationship between the misconduct and the claims. Thus, there is no triable issue on the third and final *Peregrine* factor—REP's "misconduct is sufficiently related to the causes of action asserted in this case." (*Peregrine*, *supra*, 133 Cal.App.4th at p. 679.)

Plaintiff attempts to avoid this unavoidable conclusion by arguing defendants were only retained for real estate transactions, and REP's misconduct involved securities violations. However, plaintiff fails to recognize, "The question is whether the unclean conduct relates directly 'to the *transaction* concerning which the complaint is made,' i.e., to the '*subject matter* involved' [citation], and not whether it is part of the basis upon which liability is being asserted. [Citations.]" (*Peregrine*, *supra*, 133 Cal.App.4th at p. 681.) Once more the answer to this question is undoubtedly yes.

Under these circumstances the court properly granted summary judgment. Defendants met their initial burden with respect to the elements of the in pari delicto affirmative defense, and plaintiff failed to produce any evidence showing a triable issue of material fact. REP's undisputed participation in the fraudulent scheme affects the equities between plaintiff and defendants. For plaintiff, standing in the shoes of REP— the company which plaintiff itself alleges was at the very heart of that scheme—to now complain of defendants' alleged role in enabling REP to commit the fraud is unfair, and it is precisely this sort of unfairness the unclean hands doctrine seeks to address.

12

*4. Other Issues*

Because we conclude the court properly granted summary judgment based upon the in pari delicto affirmative defense, the standing and Business and Professions Code section 17200 issues are moot.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to costs on appeal


THOMPSON, J.


WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.

13